[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, National Loan Investors, L.P., in its capacity as assignee of People's Bank, brings this action to foreclose a certain mortgage on real property known as 165 Grassy Plain Street, Bethel.
The mortgage instrument (Ex. 11), dated March 28, 1990, was signed by Robert Rasamny as power of attorney for his father, Rafic Rasamny.
The mortgage secured a commercial revolving note (Ex. 10) in favor of People's Bank, for one million dollars. The note was also signed by Robert Rasamny as power of attorney for Rafic Rasamny. CT Page 7007
The power of attorney was dated January 2, 1990 (Ex. 9).
Rafic Rasamny subsequently signed both the commercial revolving note, and the mortgage instrument (Ex. 10 11).
At the time of the execution of both documents, Rafic Rasamny represented that he was the sole owner of 165 Grassy Plain Street. A letter to that effect was signed by Attorney Patricia Dineen (Ex. 8) of the firm of Rasamny and Dineen, P.C.
The loan agreement was modified in 1993, following the issuance of a standstill letter dated August 6, 1992 (Ex. F), claiming the borrower was in default under the existing documents.
During the modification procedure, People's Bank discovered a problem concerning title to the property in question.
Although Attorney Robert Rasamny authored an opinion letter as counsel for his father (Ex. 12), the question of title was addressed in a Loan Restructure Agreement (Ex. 13), signed by the borrower, Rafic Rasamny.
As a condition of the loan restructuring, specified in paragraph 1.5 (Ex. 13), Rafic Rasamny agreed:
 On or before July 1, 1993, the Borrower shall have clarified and resolved all title issues (to the satisfaction of the Bank) relating to the Property, such that the Borrower has the sole ownership interest in the property and that the Bank shall have a valid perfected first mortgage with respect to the Property. On a monthly basis on or before the first day of each month . . . the Borrower shall provide the Bank with written reports regarding the status of the resolution of the title issues involving the Property. . . .
Failure to clarify the title issue on or before July 1, 1993, constituted a default under the express terms of the agreement (Ex. 13, paragraph 4.1(b)).
 I HISTORY OF PROPERTY
The events preceding the signing of the mortgage instrument and revolving note (Ex. 10 11), and the Loan Restructure CT Page 7008 Agreement containing the obligation of the borrower to resolve all title issues, involve a series of innocent mistakes, rather than any pattern of calculated misrepresentations.
Rafic Rasamny and his late wife, Attia Rasamny, purchased the property as joint tenants in common without rights of survivorship in July of 1982 (Ex. 1).
Attia Rasamny died on September 9, 1984 (Ex. 2), and the terms of her Last Will and Testament left her entire estate in equal shares to her five children, Robert Rasamny, Richard Rasamny, Leila May Rasamny, Linda Ann Rasamny and Jerrir R. Rasamny (Ex. 3).
Jerrir Rasamny died, unmarried and without issue, on March 2, 1989 (Ex. 21), and his interest in the property passed to the four surviving children.
Rafic Rasamny, as surviving spouse, acted at all times as if 165 Grassy Plain Street, Bethel was property of a partnership between himself and his deceased wife (Ex. 4, 5 6).
On September 22, 1989, he executed a quitclaim deed as Executor of the Estate of Attia Rasamny, conveying the property to himself. The deed was recorded on October 5, 1989 (Ex. 7).
The instrument was executed and recorded, apparently without Rafic Rasamny knowing that the property had been left to his five children pursuant to the terms and conditions of his wife's Last Will and Testament (Ex. 3).
 II EVENTS FOLLOWING 1993 LOAN RESTRUCTURE
The title issue was not resolved by July 1, 1993, as required by the restructuring agreement, thus placing Rafic Rasamny in default under the terms of the agreement.
Efforts to resolve the title issues continued with the assistance of Old Republic Title Insurance Company, and Attorneys Jeremiah Dineen and Robert Rasamny. (Ex. 20 21.)
The title issue was finally resolved when Attorney Jeremiah Dineen secured the signatures of the four Rasamny children on a quitclaim deed, conveying their interest in the property directly CT Page 7009 to People's Bank. (Ex. 20.)
The quitclaim deed was recorded at Volume 567, pp. 537-39 of the Bethel land records.
The deed specifically referenced the loan to the father of all four grantors, Rafic Rasamny, and acknowledged that Rafic Rasamny was in default of his obligations at the time of the conveyance.
Furthermore, a reversion was provided in the grantors, so that the deed would become void if the indebtedness of Rafic Rasamny was paid (Ex. 20).
The signatures of all four grantors were witnessed, and a letter transmitted to Old Republic Insurance Company by Robert Rasamny (Ex. 20).
After Rafic Rasamny defaulted in payment of the note, People's Bank brought this action to foreclose the mortgage.
The four living children of Rafic and Attia Rasamny were named in the action, due to the reversionary interest contained in the quitclaim deed.
In their answer to the complaint, filed November 26, 1995, the four heirs of Attia Rasamny alleged, by way of special defense: (1) there was no consideration for the quitclaim deed; (2) People's Bank violated the Connecticut Unfair Trade Practices Act (CUTPA), § 42a-100 of the Connecticut General Statutes; and (3) the interest of the four heirs was not encumbered by the mortgage instrument.
Prior to trial, in a pleading dated August 12, 1997, filed on April 30, 1998, the day of trial, a fourth special defense was added, claiming that the interest of the four children in the property was admitted as part of the pleadings in a pending malpractice action (CV-94-0317049 s, Ex. J).
At trial, it was admitted that a violation of the Connecticut Unfair Trade Practices Act (CUTPA) could not be raised by way of special defense, and that claim was withdrawn.
No evidence concerning duress in the execution of the quitclaim deed was offered. CT Page 7010
It is also clear that nothing in the pleadings of the malpractice action (Ex. J) is inconsistent with the claims made in the foreclosure action.
If the defendants are to prevail in their special defense, they must do so by demonstrating that the quitclaim deed was not supported by consideration.
 III QUITCLAIM DEED SUPPORTED BY CONSIDERATION
Both Richard and Linda Rasamny testified at trial that the quitclaim deed was signed, in an attempt to help their father, Rafic Rasamny.
No evidence was presented to indicate that any grantor was misled as to the contents or the effect of the document. The quitclaim deed was properly witnessed as required by law.
Failure to read the quitclaim deed before signing, particularly when the claim is advanced by educated individuals with an understanding of the law and real estate transactions, can not avail any of the grantors. The terms of the quitclaim deed are imputed to the signers, even if the deed was not read. DiUliov. Goulet, 2 Conn. App. 701, 704 (1984).
There is no question concerning the fact that Rafic Rasamny was in default under the terms of the loan restructuring agreement (Ex. 13) when the quitclaim deed was signed.
The recording of the quitclaim deed signified that the issue of title, outlined in paragraph 1.5 of the loan restructuring agreement had been resolved. The bank did not institute foreclosure proceedings on that basis, because the quitclaim deed effectively removed that basis for an action.
"Forbearance from suit is . . . valid consideration for a contract if the claim on which the suit was threatened was valid and enforceable." (Internal quotation marks omitted.) Iseli Co.v. Connecticut Light Power Co., 211 Conn. 133, 136 (1989); Dickv. Dick, 167 Conn. 210, 225 (1974).
Forbearance to prosecute a cause of action, where the right is honestly asserted, is valuable consideration and will support CT Page 7011 a promise. Warner v. Warner, 124 Conn. 625, 632 (1938).
The evidence supports a finding that People's Bank did not pursue a foreclosure against Rafic Rasamny, based upon the title issue, following receipt of the quitclaim deed, because the deed resolved that issue.
Where one party does something calculated to induce another party to believe that certain facts exist, and to act on that belief, and the other party changes his position thereby, a promisor will be bound by his promise, and can not deny the existence of consideration for that promise. Restatement (Second) Contracts, § 90; Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471, 475 (1980); Lunn v. Tokeneke Assn. Inc.,227 Conn. 601, 607 (1993); Palumbo v. Papadopoulos, 36 Conn. App. 799, 801
(1995).
Because the testimony and the exhibits amply support the existence of consideration for the quitclaim deed, it is unnecessary to consider the defendants' argument that failure to actually receive the $1 consideration recited in the deed, renders the deed without consideration.
 IV FINDINGS
1. IT IS FOUND, that Rafic Rasamny obtained a commercial revolving loan from People's Bank, secured by a mortgage on property located at 165 Grassy Plain Street, Bethel (Ex. 10 
11).
2. IT IS FOUND, that a Loan Restructure Agreement (Ex. 13) was signed by Rafic Rasamny, effective May 21, 1993.
3. IT IS FOUND, pursuant to the Loan Restructure Agreement, that Rafic Rasamny failed to clarify the issue of title to 165 Grassy Plain Street, Bethel, by July 1, 1993, as required by the Loan Restructure Agreement.
4. IT IS FOUND, that the failure to clarify the issue of title represented a default under the terms of the Loan Restructure Agreement, giving People's Bank the right to accelerate the loan due, and initiate foreclosure proceedings.
5. IT IS FOUND, that the quitclaim deed from Richard Rasamny, CT Page 7012 Linda Ann Rasamny, Robert Rasamny and Leila May Rasamny to People's Bank was supported by consideration.
6. IT IS FOUND, that following the execution and recording of the quitclaim deed, Rafic Rasamny defaulted on the note due to nonpayment, and foreclosure was initiated on that basis by People's Bank.
7. IT IS FOUND, that the plaintiff, National Loan Investors, L.P., was assigned the mortgage and note which are the subject of the instant foreclosure action, and is maintaining this action as assignee of People's Bank.
8. IT IS FOUND, that the defendants, Robert Rasamny, Richard K. Rasamny, Leila May Rasamny and Linda Ann Rasamny, have no defense to the foreclosure action.
9. IT IS FOUND, that there is a current outstanding principal balance of $870,879.20, plus interest through April 30, 1998, in the amount of $294,215.40, for a total due as of April 30, 1998 of $1,165,094.67, as testified to by Patricia O. Phalon of People's Bank and Dwight Hooper of National Loan Investors.
 V ORDER
Judgment of foreclosure may enter, as against each defendant, Robert Rasamny, Richard K. Rasamny, Linda Ann Rasamny and Leila May Rasamny.
It is further ordered that a hearing be held to determine the amount of the interest accrued subsequent to April 30, 1998, attorney's fees, costs of action, and further proceedings as may be necessary.
Radcliffe, J.